2013041
UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| LEON TAYLOR,<br>        Plaintiff,<br>v.<br><br>OFFICER WRIGHT, OFFICER<br>JONES, JOHN DOE,<br>        Defendants.<br>_____/ | Case No.: 20-13041<br><br>Nancy G. Edmunds<br>United States District Judge<br><br>Curtis Ivy, Jr.<br>United States Magistrate Judge |

**REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 22)**

I.     **BACKGROUND**

    A.     <u>Procedural History</u>

Plaintiff Leon Taylor filed this civil rights matter, on November 5, 2020, without the assistance of counsel, against Michigan Department of Corrections ("MDOC") employees. (ECF No. 1). Taylor alleges violations of the Eighth and Fourteenth Amendments to the United States Constitution. On March 1, 2021, defendants Wright and Jones filed a motion for summary judgment based on failure to exhaust administrative remedies and Eleventh Amendment immunity. (ECF No. 22). Taylor responded (ECF No. 26), and Defendants replied (ECF No.

29).  This case was referred to the undersigned for all pretrial matters on December 11, 2020.  (ECF No. 12).

For the reasons set forth below, the undersigned recommends Defendants' motion for summary judgment be **GRANTED**, and this case be dismissed.

B.   Complaint Allegations[1]

At all times relevant to the complaint, Plaintiff was housed at the Macomb Correctional Facility ("MRF").  After he was exposed to the COVID-19 virus and placed in quarantine, he was assigned to housing unit five at MRF, where he alleges his constitutional rights were violated.  Defendant corrections officers Wright and Jones worked in unit five during the time relevant to the complaint. (ECF No. 1, PageID.3).

On March 26, 2020, Plaintiff was informed by MRF health services he would be given tests to detect the flu and COVID-19.  Pending the outcome of those tests, Plaintiff was housed in segregation with prisoners were who infected with COVID-19.  Plaintiff remained there for "a few days (2) or more" wearing the same clothes.  He was then assigned to a room in unit five.  Members of MRF administration informed Plaintiff to stay clean with soap and that all areas of the

---

[1] The following allegations derive from the original complaint.  Plaintiff filed a "First Amended Complaint," but that document merely strikes defendant Willis Chapman from the complaint.  The "First Amended Complaint" does not contain new or additional (or any) allegations.

2

prison should be constantly cleaned and disinfected. While in unit five, Plaintiff repeatedly requested bleach and other supplies to clean his room. Defendants Wright, Jones, and John Doe denied his requests.

The defendants also refused to accept mail from Plaintiff, presumably mail to be delivered outside the prison. In addition, Plaintiff was forced to stay in the same clothing for approximately twenty days despite repeated requests for additional clothes. Plaintiff further maintains that despite his diabetes diagnosis, he was provided cold, nutritionally inadequate food for those twenty days.

Plaintiff also asserts he was forced to shower where approximately 40-60 prisoners with COVID-19 had previously done so. Plaintiff complained to defendant Jones that the showers were never cleaned or disinfected, the bleach bottle was empty, and no other cleaning supplies were provided. In response, Jones stated, "either you are going to take a shower or not." (*Id.* at PageID.4-6).

## II. DISCUSSION

### A. Standard of Review

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court

"views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists. . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56(e)(2) (providing if a party "fails to properly address another party's assertion of fact," then the court may "consider the fact undisputed for purposes of the motion"). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The nonmoving party must "make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Lee v. Metro. Gov't of Nashville & Davidson Cty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts, there must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citation omitted). In other words, summary judgment is appropriate when "a motion for summary judgment is

properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case. . . ." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

The fact that Plaintiff is *pro se* does not reduce his obligations under Rule 56. Rather, "liberal treatment of *pro se* pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006). In addition, "[o]nce a case has progressed to the summary judgment stage, . . . 'the liberal pleading standards under *Swierkiewicz [v. Sorema, N.A.*, 534 U.S. 506, 512-13 (2002)] and [the Federal Rules] are inapplicable.'" *Tucker v. Union of Needletrades, Indus. & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005) (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)). The Sixth Circuit has made clear that, when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's "status as a *pro se* litigant does not alter [this] duty on a summary judgment motion." *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010); *see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (affirming grant of summary judgment against a *pro se* plaintiff because he "failed to present any evidence to defeat the government's motion").

  B. <u>Exhaustion under the PLRA</u>

5

Under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e *et seq.*, a prisoner may not bring an action "with respect to prison conditions under section 1983 of this title, or any other Federal law . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Congress enacted the provision to address the "outsized share" of prisoner litigation filings and to ensure that "the flood of nonmeritorious claims does not submerge and effectively preclude consideration of the allegations with merit." *Jones v. Bock*, 549 U.S. 199, 203-04 (2007). Put another way, the purpose of § 1997e(a) is to "reduce the quantity and improve the quality of prisoner suits[.]" *Porter v. Nussle*, 534 U.S. 516, 524 (2002). In addition, exhaustion "gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of [the agency's] procedures." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (internal quotation marks and citation omitted).

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones*, 549 U.S. at 211. The prison's grievance process determines when a prisoner has properly exhausted his or her claim. *Id.* at 218 ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of

proper exhaustion."). Even where a prisoner has made some attempts to go through the prison's grievance process, "[t]he plain language of the statute makes exhaustion a precondition to filing an action in federal court." *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999).

The prisoner "may not exhaust administrative remedies during the pendency of the federal suit." *Id.* (citations omitted); *see also Woodford*, 548 U.S. at 95 ("A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction. . . ."). However, "the PLRA and Federal Rule of Civil Procedure 15 permit a plaintiff to amend his complaint to add claims that were exhausted after the commencement of the lawsuit, provided that the plaintiff's original complaint contained at least one fully exhausted claim." *Mattox v. Edelman*, 851 F.3d 583, 595 (6th Cir. 2017).

Finally, "inmates are not required to specifically plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216. Instead, failure to exhaust administrative remedies is an affirmative defense under the PLRA. *Id.* As such, defendants bear the burden of proof on exhaustion. *Surles v. Andison*, 678 F.3d 452, 456 (6th Cir. 2012) ("A PLRA defendant bears the burden of proving that a PLRA plaintiff has not exhausted his administrative remedies.").

  C.  <u>Grievance Procedures at MDOC</u>

Pursuant to Policy Directive 03.02.130, dated March 18, 2019, the administrative remedies available at the MDOC require the inmate first attempt to resolve issues with the staff member involved within two business days of becoming aware of a grievable issue. (ECF 22-2, PageID.112, at ¶ Q). If the issues are not resolved within five business days, the inmate may file a Step I grievance using the appropriate form. (*Id.*). "Dates, times, places, and names of all those involved in the issue being grieved are to be included." (*Id.* at ¶ S).

The inmate should receive a response at Step I within 15 business days of filing the grievance. (*Id.* at PageID.113, ¶ Z). If the inmate is dissatisfied with the Step I disposition, or does not receive a response by ten business days after the due date, he or she may file a Step II grievance using the appropriate form. (*Id.* at PageID.114, ¶ DD). As with Step I, if the inmate is dissatisfied with the Step II response or does not receive a response by ten business days after the due date, the inmate may file a Step III grievance. (*Id.* at PageID.115, ¶ HH). The matter is fully exhausted after the disposition of the Step III grievance. *Surles*, 678 F.3d at 455 ("A grievant must undertake all steps of the MDOC process for his grievance to be considered fully exhausted.").

A grievance may be rejected for a number of reasons, including untimeliness, vagueness, or grieving multiple unrelated issues. (ECF No. 22-2, PageID.110, ¶ J).

D.   Analysis

According to Plaintiff's MRF grievance report, Plaintiff filed two grievances through Step III of the grievance process. However, Plaintiff only one filed during 2020 related to the issues in this case: MRF-20-05-0739-28c. Defendants argue this grievance does not serve to exhaust Plaintiff's administrative remedies because it was rejected at Step I due to grieving multiple unrelated issues. (ECF No. 22, PageID.102). The defendants also argue Plaintiff's claim for damages against them in their official capacities should be dismissed because they are protected by Eleventh Amendment sovereign immunity. (*Id.* at PageID.103-04).

Plaintiff's response is, in large part, an argument that there are issues of material fact on the merits of his claims. (ECF No. 26, PageID.140-49). A small portion of his response is dedicated to the issue of exhaustion, the issue currently before the Court. (*Id.* at PageID.149-51). In that relevant section, he argues all the issues he grieved in the grievance were part of the same transaction. He further contends he was unable to exhaust administrative remedies on his claims because his grievance was improperly rejected at Step I. He contends the grievance process was not available to him because he could not have received any possible relief in time to prevent the imminent danger posed by the virus. (*Id.*). On the issue of immunity, while defendants did not raise a qualified immunity defense in this motion for summary judgment, Plaintiff nonetheless argues the defendants are not

entitled to qualified immunity. (*Id.* at PageID.152-55). With regard to Eleventh Amendment immunity, Plaintiff asserts he may maintain a claim for damages against officials in their official capacity for a violation of civil rights pursuant to 42 U.S.C. § 1983. (*Id.* at PageID.155).

1. Exhaustion of Administrative Remedies

Plaintiff submitted his grievance on April 30, 2020. He attempted to resolve the grievance by writing two letters to the Warden explaining "the inhumane treatment" he suffered by not being given clean clothes or cleaning supplies and by the refusal of prison officials to take his mail or grievances. The Warden did not respond to the letters. Plaintiff's grievance states in full, without alteration:

> I was tested positive for COVID-19 and placed in five unit 5-95 March 26, 2020 until 4-14-20. Then transferred to ARF "step down." While in five unit I asked staff on 1st shift officer Wright and on 2nd officer Jones for <u>bleach</u> or <u>disinfectant</u> for cleaning the metal toilet or sink for 20 days. All my request were denied. The food would be <u>cold</u>, all the time, I was placed in room with another prisoner, no "social distancing," no clean clothes. My letters I had inmate porter place in mail box because the police wouldn't touch our mail. I am not to be retaliated against for redress my grievances, nor transferred as a result of this grievance. The reason why this grievance is being filed untimely is because while in 5-unit they wouldn't accept it. Then I was moved to ARF for step down program unit 4-26-20. Still don't have personal property.

(ECF No. 22-3, PageID.125) (emphasis in original). The last sentence was written in blue ink, while the remainder is written black ink.

The Step I grievance was rejected for containing more than one issue. (*Id.* at PageID.126). Plaintiff appealed at Step II, where he argued the issues in the Step I grievance were part of the same transaction and should receive a merits-based ruling. (*Id.* at PageID.123). His Step II and Step III appeals were denied; the rejection at Step I was upheld. (*Id.* at PageID.122, 124).

The MDOC grievance policy provides that a grievance may be rejected if it "contains multiple unrelated issues." (ECF No. 22-2, PageID.110, ¶ J). As set forth in *Burnett v. Howard*, 2010 WL 1286256, *1 (W.D. Mich. Mar. 30, 2010): "[a]s long as the state clearly rejects a grievance for a reason explicitly set forth in the applicable grievance procedure, a subsequent § 1983 claim based on the grievance will be subject to dismissal for failure to properly exhaust." However, the Court is not "required to blindly accept the state's application of the procedural rule." *Reeves v. Salisbury*, 2012 WL 3206399 (E.D. Mich. Jan. 30, 2012), *adopted in relevant part*, 2012 WL 3151594 (E.D. Mich. Aug. 2, 2012).

While a grievance that contains two entirely unrelated issues is not proper, a grievance containing multiple issues that are related or involving one claim and multiple harms properly exhausts administrative remedies. *Id.* at *5 (citing *LaFountain v. Martin*, 334 F. App'x. 738, 741 (6th Cir. 2009)). In *LaFountain*, the grievance contained multiple related issues: the defendant retaliated against the plaintiff for filing grievances by labeling him a snitch and a sexual predator, which

11

lead to the plaintiff's cell being robbed. *Id.* Similarly, in *Reeves*, the court concluded that the grievance at issue contained allegations of multiple harms (allegedly false misconduct tickets and allegedly false testimony at the misconduct hearing) stemming from one incident of retaliation for filing a Warden Forum Complaint, not multiple unrelated issues, as stated by the grievance investigator in rejecting the grievance. *Reeves*, 2012 WL 3206399, at *6.

Here, the greater part of the Step I grievance, like in *LaFountain* and *Reeves*, contains more than one occurrence or harm to support a single claim—the issue of the "inhumane treatment" at MRF related to the COVID-19 virus, i.e., lack of cleaning supplies, lack of social distancing, the prison's refusal to accept mail because of the virus, dirty clothing, and cold food. These issues do not constitute multiple *unrelated* issues.

Plaintiff's grievance, however, did not stop at the COVID-19 issues. Plaintiff's brief discussion of his transfer to another prison was clearly meant only to provide background information. Nevertheless, when Plaintiff—complained he still did not have his personal property, based on the structure and substance of the grievance, he raised an additional issue separate and apart from the COVID-19 issues. The property issue is related to the prison transfer; it is not relevant to, nor related to, the deliberate indifference claims raised in this case. Accordingly, the grievance was properly found defaulted at Step I.

Plaintiff's arguments that the grievance process was unavailable to him are unavailing. First, the fact that the grievance was rejected at Step I does not mean the grievance process on that grievance became unavailable. Plaintiff's recourse, if he so chose, was to appeal the grievance. Indeed, he timely appealed at both Steps II and III. Second, reading his brief liberally, Plaintiff appears to claim the grievance process was unavailable because prison officials would not accept his grievance. This assertion is belied by the fact that he was able to file the Step I grievance and appeal it through Step III. Moreover, in the Step I grievance, Plaintiff provided an excuse for purportedly filing the grievance in an untimely manner. Even if the grievance was untimely, the prison apparently forgave the lateness or chose to ignore it as the prison did not reject the grievance as untimely.

2. Eleventh Amendment Immunity

Plaintiff sued all defendants in both their individual and official capacities. Defendants are correct that, as MDOC officials, they are entitled to Eleventh Amendment immunity from Plaintiff's claims when they are sued in their official capacities. Where a plaintiff sues a defendant in his or her official capacity, it "is not a suit against the official but rather is a suit against the official's office." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Plaintiff's claims against defendants in their official capacities, therefore, are claims against the State of Michigan, and "the Eleventh Amendment bars a damages action against a State

13

in federal court." *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). Thus, the Eleventh Amendment bars Plaintiff's claims for money damages against defendants in their official capacities.

### III. RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that Defendants' motion for summary judgment (ECF No. 22) be **GRANTED** and this case be dismissed.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 16, 2021                    s/Curtis Ivy, Jr.
                                         Curtis Ivy, Jr.
                                         United States Magistrate Judge

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on August 16, 2021, by electronic means and/or ordinary mail.

                                         s/Kristen MacKay
                                         Case Manager
                                         (810) 341-7850